Good morning, Your Honors. May it please the Court, my name is Jim Murray, here on behalf of the plaintiff and the appellants Powertel and Voicestream, now known as T-Mobile International. About three years ago, in August of 2001, a claims administrator for the Kemper Companies, Amoco and Lumbermans, who are defendants in this case, did what he was supposed to do. He took the complaint, at that time just the complaint, not even the amended complaint, and he took the insurance policy, and he sat down at his desk, and he read them, and he put them together, and he did what he was trained to do in claim school, and he did what he was required to do by Washington law and by law of almost every jurisdiction in the country. And that result is at the excerpts of record 128 to 131. A now lonely claims administrator wrote the following at 129 to my client. After comparing the allegations of the complaint to the terms and the conditions of the foregoing Amoco and LMC policies, Amoco and LMC have concluded that there is a potential for coverage in this matter. Accordingly, we agree to provide Voicestream with the defense in this matter subject to the reservation of rights set forth below. Now, that claims administrator based his decision primarily on one paragraph in the first complaint. And, indeed, at excerpt of record 128, the first page of that letter, he sets forth the first paragraph in the hand-up that I've passed to your honors that reflects various parts of the record that the district court in this case ultimately ignored. The question that the administrator looked at before all the lawyers were involved, before 90 pages of briefs were written, was a very simple one. Does this allege bodily injury? Is there the potential for coverage? And I know your honors are intimately familiar with all the standards of construction for the duty to defend in this State and every other State in the Ninth Circuit. And I won't go into them here except to say this is one where we don't need canons of construction. We don't need crutches. The complaint clearly alleges the potential for coverage as the claims administrator prior to the litigation says. If you look, your honor, to the hand-up I've given you, and Judge Hugg, I hope it was faxed to you, excerpt of record, the first, I'm citing here the Farina complaint. There's no dispute that all four complaints that are now consolidated in the District of Maryland have similar, identical allegations. But let's just look at the first paragraph because if I had the courage of my convictions, I probably would have written a three-page brief on appeal just like the claims administrator did. And I would have cited this paragraph, I would have cited the insurance policy definition of bodily injury, and I would have gone home. This says the defendants knew or should have known that their products generate and emit radiofrequency radiation that causes an adverse cellular reaction and or cellular dysfunction through its adverse health effects on the following litany of things. I want to get to a couple of those, but first, it causes it. It's not predicting. That's past tense. It's alleging that these things occurred. Your honor, we have to look at this as would a person on the street. And we ask the question, is this bodily injury? Let me put it to you this way. You stop a person on the street, even a fairly sophisticated person, and you say, how would you like to have adverse cellular dysfunction to the calcium and ion distribution across the membrane cells of your body? Now, you know, I'm not even totally sure what that means, but I can tell you right now that I don't want it. And it's alleged that it happened. How would you like cellular dysfunction to the permeability of your blood-brain barrier? I think before I read this, I wasn't sure I had it, didn't know I had a blood-brain barrier, but I know that I don't want it dysfunctioning. Now, that's what the allegations are, your honor. And let me back up for one second to talk about one provision of the duty to defend. As your honors know, duty to defend is sometimes in liabilities referred to as litigation insurance. It's the good hands of all States, Kemper to your rescue. And it's intended for cases where the lawsuit against you are frivolous. Let me say clearly, unambiguously for the record, my clients and the other clients, the defendants in this case, don't for one second believe these contentions. They don't contend that cell phones cause any of these things. Indeed, we think it's hogwash and we think it's based on junk science. And someday, if we have to go to trial on that, if this gets past preemption rulings, we will prove that. And our colleagues on that side of the aisle should have been with us helping us disprove that. Now, that has nothing to do with the case here. The plaintiffs have alleged this. Now, your honors, this first paragraph that I've alluded to, that's the complaint that the claims administrator and, by the way, the Fourth Circuit that subsequently reversed the case that Judge Peckman relied on, that's the paragraph it relies on. And that was in the first complaint. But it's even clearer than that in the amended complaints, which Judge Peckman did have before her. She was the first judge, actually, to rule on the amended complaints. And the next two provisions there are from Counts 7 and 8 that have been added to the complaint for civil battery and for negligent misrepresentation. And, again, what happens here is it picks up the definitions of the health risk and biological injury. Judge Peckman, in her decision, said, well, there's a lot of reference to health risk in the complaint. Well, that's absolutely true. What wasn't mentioned by the district court was that the concept health risk had been defined in this opening paragraph to include all of these things that happen to one's body. And if you look at, actually, Excerpt Record 175, I didn't quote it here, and I'm not purporting in the hand-up I've given you to cite everything in the record that supports our position on this or that the claims administrator looked at. It's just the best thing. But the civil battery, paragraph 152 of 175, it says, Deforementioned conduct or omissions of the defendants intentionally afflicted offensive, unpermitted touching to the plaintiffs. I mean, that's the standard for civil battery. It doesn't say it might do it in the future. It says it's happened. So when Judge Peckman turned to counsel that argument and asked the following question for a policyholder lawyer, it was almost a sacrilegious moment to even hear the question. But at ER 393, she asked, should we be looking to the underlying trial court, that is, the Maryland liability court, to decipher what this case means? And she goes on and says, is there any case law or deference that says the judge who is in charge of the ship, here the liability judge, should be looked to to see what the case is about? And the answer to that by counsel at 393 was, I believe the answer is obviously yes, Your Honor. While counsel cited no case, he couldn't cite a case because that is absolutely not the law. It's been not the law for years in this jurisdiction and other jurisdictions throughout the country. And only two weeks before, in the truck exchange case, the Washington Supreme Court had ruled very clearly and unanimously, very clearly on this issue. And just to highlight that, it's cited at page 12 of our brief. But this is the answer to Judge Peckman's question. The Ninth Circuit, I mean, the Washington Supreme Court answered it directly. Put simply, an insurer may not rely on facts extrinsic to the complaint in order to deny its duty to defend, whereas here the complaint can be construed, can be interpreted as triggering the duty to defend. That's clearly the law. The claims administrator for Kemper knew it. And why is that? You know, Boeing v. Aetna, 1990 Supreme Court case in Washington, said these rules of construction apply to these standard form policies that have been around for years. And, yes, in 1990 on that day, it was protecting a corporate giant, the Boeing Company. But on the next day, those rules were going to be construed as to the same policy and the same language for mom and pop on the corner or an individual. And it's important that the rules be applied the same. And that's why you take the complaint and you take the policy and compare it. You can't have the claims administrator or the federal district judge calling up the trial judge or the plaintiffs and say, well, you know, you do talk about cellular injury here. You do talk about biological. But what are you really after? Aren't you really after saying that this is you just want headsets, which I'm going to talk about in a second? You can't have that. Duty to indemnify, that's a different issue. But what we're talking about now is the duty to defend. And there is the potential of coverage. The insurers try one other argument in this case that actually Judge Peckman didn't even buy. And if you turn to the second page of the handout, this is the argument that even if there is bodily injury alleged, that it wasn't because that the damages were not because of it. So you're looking at this phrase because of. And Judge Peckman actually, in her opinion, said, you know, on that one, I'm aware that the Voice Dream has cited the Fluke case, Washington Supreme Court, Marley case, Olds Olympic. But you know what? And she says that ER 403, the problem with this argument is that there has that there are no allegations that injury has already occurred in this case. So Judge Peckman actually realized just on the first argument that there's no bodily injury. But I want to address this quickly because the carriers in their briefs before this Court have set forth it extensively. But the theory is there's no damages because of this bodily injury. And that's just not true. We know it in so many different ways. The most important, let's go to the complaint. And again, not agreeing with it, just saying what the complaint says, Your Honors. And if you look at actually the middle site there, ER 177, the Farina complaint, prays for compensatory damages, including but not limited to amounts necessary to purchase a headset. First of all, it says compensatory damages. Not saying their theory is right, but it says that. So that should be the end of the case right there. Secondly, for including but not limited to, most plaintiffs don't spell out every damages they're going to assert from you. But let's talk about the cost of the headset. Because I think Judge Peckman, when she was asking counsel what's this case really about, an improper question under truck exchange, was asking about this headset issue. And the cases are clear, Your Honor. We talked about the Marley case, which is the irrigation case, Olds Olympic. And let's talk about the environmental area for a second. When there's already been damage to the soil, already some harm, then money spent to prevent further harm is damages within the meaning of the policy. It's just clear under the Boeing case and under the Marley case. And in a good example, and really kind of the analog of the headsets here, in environmental remediation, probably the most expensive part of a remediation is frequently the slurry wall. So here in Seattle, if we've got trichloroethylene heading toward the Duwamish River from some of the manufacturing facilities, in addition to aerating the chemicals and getting it out of the soil and getting rid of past contamination, you stick a slurry wall down there so that it doesn't go any further. And that's frequently a multimillion-dollar exercise. And Boeing and Olds Olympic have said, of course that's covered. It's like a sling when you go to the doctor and you've got to allow that arm to heal. Now the cost of the sling is covered. So there's no question that just even on that ground, these are damages because of. So finally, Your Honors, that leaves the carriers with an extremely technical argument that because of here, if you look at it narrowly, not like you're supposed to under rules of construction broadly and liberally, but if you look at it really narrowly, maybe you can say that these headsets aren't because of the bodily injury. I've shown that's wrong, but what I say is less important than what the Washington Supreme Court said in fluke, and we cite that in our brief. But at 34 Pacific Third at 814, addressing this narrow because of issue, the Court says, as the Court of Appeals observed, the trial court imputed a legalistic meaning to the phrase because of. Rather than reading it as it is commonly understood in context with the rest of the insuring clause. You know, the Fourth Circuit case. I'm sure, as you know, concludes those bodily injuries in that case. But, see, they make this statement. The Maryland courts have uniformly held that bodily injuries include those that occur at the minute cellular level, and they cite Maryland cases. Are there any Washington cases that so hold? Not directly, Your Honor. Let me address that very issue. There are Washington cases in the context of pollution that, and I'm talking here about B&L trucking, and we cite those cases, and rural construction. Actually, Washington was a leader in this area that said, look, you've got a 20-year period where individual molecules of soil are being contaminated. Then those policies have property damage occurring. It's the same phrase, bodily injury or property damage. And I'm going to answer your question directly in just one second. This issue is usually addressed in the trigger concept, where you have a long period, and there's been, for the last 20 years, so much written on this. But it's usually in the context not of what is bodily injury or what is property damage, but is years 1, 2, and 3 triggers. And Washington courts have adopted an injury-in-fact approach. And they've said if you can prove even a little bit of injury in those years, the policy is triggered. So by analogy, I think the Washington Supreme Court's opinion in B&L trucking would control here, and it's clearly the law of the land. I don't think it matters. I mean, I have the State, and I don't think bodily injury matters. But, Your Honors, directly on bodily injury, we do have the Trin and the Green cases, T-R-I-N-H. Those are court of appeals cases, and they're cited in our brief. And what they say is that, look, in a case where post-traumatic stress disorders are being alleged, you see your spouse get killed on the highway. If it's just the stress disorder, no, that's mental. It's not physical. It's not bodily. But the court of appeals goes on to say if you have manifestations of it in your body, such as sleeplessness, such as headaches, such as moodiness, a physical manifestation of that, albeit slight, is good enough. And finally, Your Honor, if I could. Yeah, but there's no physical manifestation here, though. There is no physical manifestation. I'm sorry. There are cases that say if there's physical manifestation, that's sufficient, but that doesn't help you. I misspoke, Your Honor. And I should not say physical manifestation. I meant a physical injury. And indeed, this state most clearly is not a manifestation state. And I think what the district court did, this state is clearly an injury in fact state. If you have ten years, let's take asbestos for a moment, ten years of the cells being damaged, and the day before it's diagnosed, the day before you walk into the doctor for your check-up, you have no idea, and all of a sudden you're diagnosed with cancer of the lungs or with asbestosis. That's the year it's manifested. That theory has been soundly rejected in Washington and the property damage context explicitly throughout the country in most states, as entirely made up. That's not what the policy is. What about certifying this question to the Washington Supreme Court? There's no case right on point, is there? Your Honor, I would – I – there's no case right on point on bodily injury. I would – I submit to the – first of all, I'd rather have you submit it than lose. And I think – and I'd be happy to have the Washington Supreme Court look at it. But I think this Court should rule on the insufficiencies and get it back to the district court. I think B&L Trucking grew – this state was the leader in adopting an injury in fact test, not a manifestation, not an exposure test. I see in the handout the counsel point up – they give you a passage from the American Home Products case in the Second Circuit that says exposure is irrelevant. I agree with that. Remember, in the trigger context, there's three possibilities. Exposure, when you're first exposed to the asbestos. Manifestation, when 20 years later a doctor finds it. And then everything in between, injury in fact. Actual, actual cellular injury. And that might have to be proved later for insurance purposes. Washington clearly is in that category of cases, Your Honor. Is there any allegation that any particular plaintiff here has suffered this bodily injury? There are – the allegations are that all of these plaintiffs have uniformly studied these. That is what the class has in common, that they don't have eye cancer and they don't have tumors of the brain. But they all have the cellular damage that's described in the amended complaint that I gave to Your Honor there in paragraph 2A. That is the class. You've got about two minutes. Do you want to reserve it? Thank you, Your Honor.  Good morning, Your Honors. John Hayes on behalf of the appellee insurers. We are here to ask you to affirm the decision. Are you the only lawyer arguing for the defendants today? Yes, Your Honor. All right. That's fine. Go ahead. Again, we ask for affirmation of the trial court's decisions, which was reached on two independent prongs. What we have before you is just the duty to defend decision. The duty to indemnify decision was not on appeal. It's been waived and hasn't even been argued as being contrary to that. It's not right, is it? Well, it was part of the trial court's order dismissing the indemnity claim. We brought a dismissal motion to dismiss both the duty to defend and the duty to indemnify. The court granted our motion on both claims. Focusing on the duty to defend, this case is under Washington law, and it's important to consider that as Your Honors deliberate on this case. There's been a lot of out-of-state authority put in front of you. It's very clear in this State about what is required to constitute bodily injury under a commercial general liability policy. But there is no case that considers this kind of fact situation, is there? No, Your Honor. Not directly on point. But we do have a rule of law set forth in the Easy Loader case, which is cited in our brief. And I'll quote, it had to construe the meaning of bodily injury. It said it means actual or existing bodily injury, sickness or disease resulting in physical impairment. The reason this is resulting in what? I'm sorry, Your Honor? Physical impairment. That is Easy Loader. It's 106 Washington 2nd at page 908. It's very clear what the rule of law in the State of Washington is with respect to interpreting and construing a commercial general liability policy where bodily injury is the focus of the inquiry. Very much unlike the rule of law in Maryland, which led the Fourth Circuit to make its decision in the underlying case. In Maryland, cellular level disruption is considered bodily injury under a commercial general liability policy. That is not the rule of law in the State of Washington. Easy Loader makes it very clear you have to have an actual physical injury resulting in physical impairment. Very distinct. Why wouldn't physical. I'm sorry. Go ahead. Why wouldn't physical impairment to a cell or cellular structures? Why wouldn't that be bodily injury? Because you need in Washington under this rule, you need actual physical injury that results in an impairment. Yeah. But, you know, the cells with this easy loader doesn't directly address the issue. But that's only it doesn't direct the fact pattern. You're absolutely correct. You know, the only issue there was whether, you know, a mental language, emotional distress, that kind of love, that kind of allegation was covered. And then obviously, no, but it really doesn't address this, you know, cellular cellular change kind of allegation, does it? No, it does not. That was not the fact that there is no clear law in Washington. We do not have anything about certification because I believe you can apply this rule of law in this case without. Well, you hope they would, but it's not clear, is it, what the law is? I think the rule of law is clear, Your Honor. You need an actual injury that's physical and results in impairment. I know that. But the question is, is the cellular change an actual injury? That's the question. Is it actual bodily injury? To say you need an actual bodily injury, I think, just begs the question. What's wrong with the Four Circuit's interpretation? Because they were applying Maryland law, Your Honor. How about that? What's wrong with that? What's wrong with that law? Because Maryland has clear law that, unlike Washington law, says you don't have to have an actual injury with impairment. No, it doesn't say that. It doesn't say that. It says it's sufficient if you have injuries that occur at the minute cellular level. That's correct. That's Maryland law. Why shouldn't that be the law in Washington? Well, there is no law on it. There's no law either way in Washington on it. We do not have a case in Washington with these progressive disease cases under a commercial policy. You're absolutely correct, Your Honor. We do not have such a case. Isn't the cell a part of the body? Absolutely, Your Honor. It is. Well, if it is, if the cell is a part of the body and the allegation is you're damaging the cells, the cellular structure, why isn't that bodily injury? Because it begs the question, Your Honor, at what point in time does a cellular dysfunction or disruption become injury as defined in the state of Washington? Whatever it may be at a micro level, whatever the biological effects might be at that microcellular level, the question is begged within the meaning of a CGL policy in Washington, does it amount to bodily injury? Well, and there's an answer. You didn't follow my illustration. If the cell is a part of the body and you're damaging the cell, why isn't that bodily injury? I guess, Your Honor, I would refer you to an analysis in one of plaintiff's cases, and I think this is the distinction. If I may just read an excerpt, I think it answers your question. Which case is it? It's one of my handouts, Your Honor. It's an excerpt from the American Home Products Corporation case. It's the last part of my handout. And let me just read it. This is a case where it involved pharmaceutical effects. What handout are you talking about? It's my handout. The sideway ones or the vertical ones? The top of it says exposure is not bodily injury, Your Honor. And it's the last piece of the handout. Should be the last page. And this is the second circuit. Looking directly at your question, Your Honor, why isn't exposure and cellular-level disruption considered bodily injury under a commercial policy? And they rule as follows. AHP's contentions that exposure alone is sufficient to trigger coverage are contrary to the plain language of the policies. And if you look at the case, it is the same language that are in the policies before the Court today. Injury cannot be read as the equivalent of exposure. AHP's interpretation urging that exposure alone could trigger coverage are thus also not reasonable. At least one court has faced this question squarely and has said mere exposure, which is all that is alleged in these complaints. They allege more than mere exposure, Your Honor. They allege damage to the cell. What they allege is these people have higher risk of future injury because of exposure to radiation. You're talking about, say, mere exposure. In this case, you're talking about the cases I remember from 20 years ago, where, you know, people were bringing cases for fear of cancer because they were exposed to asbestos. We do not have one plaintiff in the class in this case alleging actual physical injury. What they're alleging is they were exposed to cellular change. They're alleging cellular reaction, cellular change, cellular disruption. But not one of them is alleging any kind of treatable medical condition. There isn't any request in the complaint for any compensatory damage. Are you saying it has to be treatable? There isn't a medical condition identified that's compensable. Well, suppose there's an incurable medical condition, not treatable. I'm sorry, Your Honor? Suppose somebody had an incurable medical condition. It's not treatable. Are you saying it's not injury? In this case, we don't have. It doesn't have to be treatable. Treatable is not a function of injury. All of the activity that's described in this complaint applies to all of us just living, walking around as we age. But just because we have cellular level dysfunction from the aging process doesn't mean that we have bodily injury. That's not what they're alleging. What I read them to allege, Your Honor. That's not the way I read the complaint. You're supposed to read the complaint fairly generously at the duty to defend level. That's correct, Your Honor. And what's being alleged is something they call biological injury. Cellular level changes. Whatever they may be, we take that at face value. The question is big. Does that arise to bodily injury? Yeah, but it's not exposure. It's injury. It's injury they're alleging to the cell. That is the allegation, Your Honor. They're alleging that the... Well, read that to him. Read me the part of the allegation that you're contesting. Well, I'm not contesting the allegation, Your Honor. But in one of my handouts, I have key excerpts from all the amended complaints. And what the allegation is in paragraphs one or two of the complaints is that the products generate and emit radiofrequency radiation that causes an adverse cellular reaction and or cellular dysfunction. Causes an adverse cellular reaction.  So why isn't that an adverse? Why? If it's adverse cellular reaction, why isn't that an injury to the cell and in turn the body? Your Honor, whatever you may want to call it, a biological injury, which is what the underlying plaintiffs call it, the question still is whether it amounts to bodily injury as that phrase has been construed in the state of Washington. And we would submit based on the way the Washington courts have decided it, unlike the other courts, it's not enough to constitute a bodily injury. And that's the distinction. And what case do you rely on that for that proposition? That is the Easy Loader case, Your Honor. Easy Loader v. Travelers. It's a Washington Supreme Court case. Yeah. And what did it say? It said that. But that's a case that only makes a distinction between a mental anguish and physical injury. I have no dispute with you, Your Honor. That's all it does. The facts were not on point. The rule of law we submit is on point. It's what we do have in Washington with respect to what constitutes bodily injury. What rule of law? What rule of law? That's the case. What other rule of law are you relying on? We are urging you to adopt as persuasive authority the American Home Product case, which directly addressed your question, Your Honor, and ruled that the allegations in this plaintiff's complaint do not amount to bodily injury. Without more. Near exposure to rays, radiation, pharmaceutical effects. You mean the complaint is just alleging nothing more than exposure? Increased risk of harm is what the complaint. Exposure. That's all it's alleged to. That's correct. Increased risk of harm because of those biological exposures. That's what the complaint alleges. Your Honor, let me address the second prong of the district court's order dismissing the claim for duty to defend. And it goes to the first hand that I have, which is the language of the policies. The insurance agreement says that the insurers are obligated to pay damages because of bodily injury. It begs the question of whether the remedy claimed in the underlying complaints is truly because of bodily injury. And Judge Peckman and other courts have reached the decision that the remedy requested, namely provision of headsets, is not because of bodily injury. Some courts have said it's purely a product. It's only part of the remedy requested. I'm sorry, Your Honor? It's only part of the remedy requested. Your Honor. Isn't it? No, Your Honor. I don't believe so. The only compensatory remedy requested in this lawsuit with any specificity is the provision of headsets. Excuse me. And the question is begged, Your Honor, whether the product, a cell phone, which I have brought as a demonstrative exhibit, is a product that by the provision of headsets is going to cure past alleged bodily injury. And all courts are informed by common sense. The plaintiffs in the underlying case are alleging that the cell phone put rays into their brains and other cellular parts of their body, and what they want purely is the provision of a headset. And the question is begged, what does a headset do as a remedial or compensatory measure to address alleged biological injury? And the answer is patently nothing. The damages requested was includes headsets, but it didn't say that's the only thing that was requested. You're right, Your Honor. It asked for compensatory damages including headsets. Including. Why should that be limited, read, you know, adversely to the plaintiffs, to be limited only to a headset? Because, Your Honor, in the complaint, although it's earmarked as compensatory damages, we have none of the traditional remedies called for as compensatory damages. And in all the briefing, all the plaintiffs are asking for headsets. And I'd like to give you a brief analogy as to why it's absurd. Well, of course, of course. It doesn't mean the complaint can be further amended, does it? We have no further amendments. No, but I didn't say that. I said it doesn't mean it couldn't be further amended. Conceivably, yes, Your Honor. Yeah. You know the rule in the Ninth Circuit that the plaintiff has to be offered an opportunity to amend even though there's no request? I believe that's true, Your Honor. If it's fairly conceivable that it could be amended. I agree, Your Honor. I don't see here why it couldn't be. I'm not sure why it would, Your Honor. The underlying complaints. Why couldn't it be amended to ask for monetary, specifically, monetary damages for past injuries? I think you're referring to the underlying complaints, are you not, Your Honor? The medical. The underlying complaints in the district MDL. Yeah. I suppose they could. At this point, they're all dismissed and it's up on appeal as a separate matter in the Fourth Circuit. I'd just like to underscore the lack of nexus between the remedy and the allegations in the complaint. Assuming for the moment that radiation was not the alleged cause of injury, let's assume for a moment the cell phone literally burned the user's ears and we have physical injury undisputed. We're not in a dispute about what is bodily injury. We have a physical, actual harm. I think the Court can apply common sense and conclude that the remedy of a headset has nothing to do with the actual injury. It's not curative. It's not remedial. It's not compensatory. Why is that a determination that should be made at the duty to defend stage when you're supposed to look at the allegations? But it's in the context of the insurance policy, Your Honor.  And the Court can look at the inquiry of the requested damage under that Washington line of cases and conclude this is not a remedy because of bodily injury. Well, they ask for compensatory damages, including. Let me ask this question now. What you just said reminds me of something. Now, these complaints underlying, in the underlying cases, where are they pending? They were in the they were consolidated in the MDL in Maryland. The judge earlier last year dismissed all the complaints based on preemption. But now before they were consolidated for only MDL proceedings from various places around the country, right? Yes. Four states. I think maybe mostly in the east. But why should. Why should Washington law govern bodily injury? Because why can't we apply Maryland law? Because both parties to this case have agreed that Washington law applies to the insurance coverage issues. You mean stipulated to the law? There's no dispute. I think that Washington law governs this insurance coverage action, Your Honor. Oh, I'm sure. Now that I think of it. I hadn't thought of it before because I guess it's not raised, but. I know at least one of the underlying parties is a corporate entity in the State of Washington. And I believe that's where the policy was issued under traditional choice of law rules. That would indicate Washington law. But I have to say I'm not totally familiar with that. Nobody argued that some other law. No, not at all, Your Honor. Not to the coverage case. We clearly have Washington law governing this matter. Your Honor, let me just address. It just seems odd that you should use a Washington definition of coverage to determine whether there's coverage in an action pending in Maryland that has a different definition, according to your contention, of bodily injury. It does, Your Honor. But again, Maryland law governed the insurance coverage action that was in front of the Fourth Circuit. They were applying Maryland law. Different defendants. Different defendants, different corporate entities, different places of business, different home offices. And that's not unusual. Many of these cases have different Washington. There are cases in Louisiana, I have been told, that are applying Louisiana law. There's even one in Texas, I believe, that's applying Texas law. Not unusual in cases like this to have different State law govern the coverage inquiry and understandably having different outcomes. And we submit here under Washington law there should be a different outcome than what the Fourth Circuit did under Maryland law. Your Honor, if I could just sum up here. I know I'm running short on time here. The real inquiry here is whether we have bodily injury. Everybody knows that. We have scant law in Washington. Everybody knows that, too. We do have some information from property damage cases, particularly with respect to damages. And one thing that I would urge the Court to review is the cases that distinguish between remedial and preventative damages. The Bowen-Vietna case and the Overton case clearly point to the distinction between preventative recovery and remedial. We're urging the Court to look at the requested damage as purely a preventative request. It has no remedial compensatory worth with respect to the allegations of bodily injury, even if the Court concludes there is bodily injury. The damage must be to compensate for bodily injury. Under Washington law, those are the cases with respect to property damage. I agree with counsel that they're directly transferable to the inquiry about bodily injury. The damages must be to compensate bodily injury. Provision of a headset alone, without more, is not a remedial and a compensatory measure. And we would submit that on that prong alone, you can uphold the trial court. I have a few seconds left, Your Honor. Are there any other questions you would like me to address? I guess not. Thank you very much, Your Honor. Thank you, Mr. Hayes. All right. The rebuttal. I didn't dare bring my cell phone in the courtroom. This headset is the equivalent of a slurry wall. I was trial counsel and appellate counsel in Boeing Vietna, and the Boeing Vietna Supreme Court case made a distinction between a barrel that had not leaked, and you're trying to get money to take that barrel out, and a barrel that had leaked, and you're trying to get money to take that barrel out and a remedied property. So long as there's some contamination, it's just like a slurry wall. The money spent on that is damages. Your Honor, we went on these two pieces of paper. It's not just compensatory. It does say compensatory damages, including but not limited to. So we went on that line alone. But there's also an allegation of punitive damages here. The flute case, Washington Supreme Court says if you get punitive, it's because of that bodily injury. This is junk science, but say it were true for a second, and my clients knew that the cell phones were terrible, awful things. We hid it from the public. We go to trial. That evidence comes out, and we get hammered with punitive damages. The flute case says those punitive damages were also because of the bodily injury that occurred. We went on so many different levels. This is past tense here, Your Honors, as well. One thing I didn't highlight is on the second page, ER 140. It said the question, the common question of law and fact that goes to your point, Judge Huck, whether the defendants failed to provide headsets or other devices which would have eliminated, reduced, or minimized the biological effects of the radiation. All past tense. Reduced, eliminated, minimized. Not prevented in the future. Not prophylactic. This stuff has actually occurred. Your Honor, very quickly, the argument that we've waived the indemnity, with all good respect to my good friend and counsel, that's a frivolous argument. This posture here is we move for partial summary judgment on the duty to defend. If there's no duty to defend by definition, there's no duty to indemnify. Just because we win the duty to defend. But the district court did also rule on the duty to indemnify. Absolutely. As a result of there being no duty to defend. In any case where there's no duty to defend, there's always no duty to indemnify. Was it the only basis? Absolutely. And our motion was partial summary judgment on defense. If we said that we win on indemnity, this side of the table would have been screaming louder than they are now because they have all these other coverage defenses when it gets to indemnity. So even if there's a proper. No, no, no, no. But you never argued anything about indemnity. I have not. No. And the only reason. Because in your view, it just automatically follows. Absolutely. Whatever the result is on the duty to defend. That's right. And if you remand this to Judge Heckman, it would be for the amount of attorney's fees and then also for indemnity when that day comes, if ever. Thank you, Your Honor. All right. Thank you. I want to thank both counsel for the exceptionally fine argument in this case on both sides. Very helpful to the panel. Last case on today's calendar and last case for the week. So we'll send an adjournment at this time. the conference. Could you put the conference call into 775-686-5715? I will do that. I'll go back. Do you want about five minutes? Yes. All right. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Hug, Tashima, Paez